■ In the Matter of the Claim of SUSAN BROWN, Respondent, v. HIGHWAYS DISPLAYS, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— GABRIELLI, J. Appeal from a decision of the Workmen's Compensation Board, filed April 17, 1967. The sole issue presented on this appeal is that of causal relationship, in respect of the board's findings "that the decedent's activities in working a 2½ foot lever, operating a punch to make holes in 3/16 inch thick angle iron, carrying 20 foot lengths of iron weighing 60 pounds, and placement of a 100 pound cutting machine on the roof, were sufficiently

strenuous and exerting and caused more than the normal wear and tear of life and so. precipitated the claimant's myocardial infarction", the work having been performed in connection with the construction of two large roof signs necessitating the erection of steel and wood framework. Dr. Thompson, an assistant medical examiner, in the proof of death filed with the board and in the official certificate of death stated that the sudden death was the result of an acute myocardial infarction. In addition Dr. Lapedus, predicating his opinion on the cardiac condition diagnosed by the assistant medical examiner, testified that death was causally connected with the work activities; and to the testimony regarding this hypothesis no objection was made regarding the assumptions incorporated therein. Furthermore, these opinions were also expressed by Dr. Lapedus in his two filed reports as well as a recital that the deceased had a pre-existing underlying coronary artery disease. Dr. Gioia called by appellants admitted a myocardial infarction could have been the cause of death and, while at one time stating that he could not relate the work activity with the death, later testified in response to a question as to whether the work could be a competent and producing cause, that "It could be. I am not saying it couldn't be. It could be, but we have no proof". The use of expressions by medical experts of " could be " or " probably was " or even " possibly was " do not tend to defeat establishment of causal relationship, for what the experts are saying is that while there could not be certainty in every case, their respective professional judgments were that " causality should and could be assumed and acted upon although in the nature of things it could never be scientifically proven or disproven " (*Matter of Ernest* v. *Boggs Lake Estates,* 12 N Y 2d 414, 416) ; and as further indicated in *Ernest,* " Our function is not to reject opinion evidence because nonlawyer witnesses fail to use words preferred by lawyers and Judges but to determine whether the whole record exhibits, as it does here, substantial evidence " of causal relationship. Appellants in contending there was speculative and insubstantial evidence of causal relation, basically and inferentially disagree with the finding made by the board that the work activity was " more than the normal wear and tear of life " which precipitated the myocardial infarction. It is now well settled that the performance of one's customary duties does not preclude the finding that such activities themselves are sufficiently arduous to entail " greater exertion than the ordinary wear and tear of life " (e.g., *Matter of Hudson* v. *Waddington Constr.,* 14 A D 2d 463; *Matter of Pickhardt* v. *Heist Ohio Corp.,* 20 A D 2d 737, mot. for lv. to app. den. 14 N Y 2d 484); and, as we said in *Pickardt,* " Whether given activities constitute sufficient strain is an issue of fact and thus within the province of the board (*Matter of Masse* v. *Robinson Co.,* 301 N. Y. 34)." Again, in *Matter of Lerner* v. *Terrycab Co.* (20 A D 2d 615), the court stated that " While it is true that the ' usual work ' test has lost most, if not all, of its former significance (*Matter of Gioia* v. *Courtmel Co.,* 283 App. Div. 40), there still remains a question in each case as to whether the regular job activity itself entails greater exertion than the ordinary wear and tear of life (*Matter of Burris* v. *Lewis,* 2 N Y 2d 323, 326) and this question is factual." Upon the facts in this case it cannot be said that the board, in determining these factual issues, could not reach the determination it did. Similarly, the question of causal relationship is for the board's determination (*Matter of Pickhardt* v. *Heist Ohio Corp., supra*), which here is supported by substantial evidence and must, therefore, be sustained. Decision affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Herlihy, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Gabrielli, J. Reynolds, J., dissents, and votes to reverse and dismiss in the following memorandum: Reynolds, J. (dissenting). In my view the decision of the board should be reversed and the claim dismissed.

The alleged accident was supposed to have occurred on May 15, 1959. The Referee initially disallowed the claim on July 17, 1961 on the ground that no evidence of causal relationship had been presented and this decision was affirmed by the board on September 16, 1964. Thereafter, acting on a form C-64 indicating possible causal relationship, the board on May 11, 1965 ordered the restoral of the case to the Referee's calendar for further consideration. Upon restoration and after hearings the Referee again disallowed the claim on the basis that "the evidence does not indicate that the *deceased claimant was engaged in unusual effort or was doing arduous work prior to the time of his heart attack and death.*" (Emphasis supplied.) This decision was appealed and by a 2 to 1 vote the board reversed and awarded death benefits. In so doing the board found that "the decedent's activities in working a 2½ foot lever, operating a punch to make holes in 3/16 inch thick angle iron, carrying 20 foot lengths of iron weighing 60 pounds and placement of a 100 pound cutting machine on the roof, were sufficiently strenuous and exerting and caused more than the normal wear and tear of life and so precipitated the claimant's myocardial infarction." The majority opinion here, in affirming, merely repeats the findings of the board, but is silent as to any evidence in the record to substantiate same. The difficulty is that the record contains absolutely inadequate evidence that the decedent in fact engaged in such activities or as to the extent of his involvement therein. The only witness to testify as to what transpired was Stanley Wilcenski who was working with his back to decedent when he collapsed on the roof. His long testimony details the process and equipment *generally* utilized in erecting signs but as to decedent's activities, and particularly his physical activities just prior to his collapse, it sheds very little light. There is absolutely no proof that the 100 pound cutting machine was hoisted to the roof on the date involved (or had anything whatever to do with the work that day). Wilcenski testified clearly that he could not remember if such had occurred. Such a finding is thus patently spurious. As to the handling of the angle irons, while it is sustainable the decedent might have handled some short pieces on the date involved, it is definite from Wilcenski's testimony that only a few short pieces, if any, were placed on the eight foot high roof that day and there is no proof at all as to how much handling the decedent actually did, *or that any 60 pound angle irons were handled.* Probably the record would support the finding that the decedent just prior to his death was operating the punching machine which weighed 15 to 20 pounds, but he was assisted in this operation and there is no proof whatever as to what effort was required to operate the punch, except that it was a job one man could do easily alone. In fact Wilcenski testified that he had performed the duties of both men combined in this punching operation thousands of times by himself. It is significant that there is not an iota of evidence that this required any strength or any exertion; that it is in any manner arduous or strenuous. In fact the absence of this testimony indicates that it could not be produced. Accordingly, the record just does not support the findings of the board as to the extent of decedent's activities but more importantly it is devoid of any testimony which indicates that decedent was engaged in work activity which entailed greater exertion than the ordinary wear and tear of life or that the heart attack was caused by unusually hard work. (*Matter of Burris* v. *Lewis*, 2 N Y 2d 323; *Matter of Stang* v. *Pechman & Co.*, 7 A D 2d 245; *Matter of Lerner* v. *Terrycab Co.*, 20 A D 2d 615.) The medical testimony supporting causal relationship, which incidently leaves much to be desired as to certainty, is squarely perceived on the assumption that decedent was engaged in heavy work (although this formed no part of the hypothetical question and does not exist in the record) just prior to his collapse and death. The activity, as noted by the majority, may be the usual exertion

required at that particular job, but still it must be arduous work and more than normal exertion (*Matter of Pickhardt* v. *Heist Ohio Corp.*, 20 A D 2d 737, mot. for lv. to app. den. 14 N Y 2d 484; *Matter of Sczesniak* v. *Whitney*, 12 A D 2d 366). The issue in this case is whether there is substantial evidence supporting the finding of causal relationship .(*Matter of Nick* v. *Meyer Co.*, 26 A D 2d 878, mot. for lv. to app. den. 19 N Y 2d 579). In the record there is no evidence of any effort which could be considered strenuous to the average man. If the routine operation of this machine, which as far as the record reveals only involved easily pulling a lever, constituted an accident then the traditional test of an accident has been eliminated (see *Matter of Burris* v. *Lewis, supra*). Even in *Matter of Mandelblatt* v. *Gold Star Baking Corp.* (22 A D 2d 966, affd. 16 N Y 2d 974), where decedent's cumulative efforts contributed to his collapse, the majority of this court could only affirm the finding upon the evidence that just prior to his collapse decedent had trouble negotiating a bulky carton through a small doorway. We have no such event here. Moreover, in two recent cases involving the operation of pressing machines, we found that the record was devoid of any evidence showing that the particular work of the claimant involved any excessive or strenuous physical effort (*Matter of Marquit* v. *Arjay Sportwear*, 28 A D 2d 1148; *Matter of Dreier* v. *Gordon Cleaning Corp.*, 26 A D 2d 331). Yet in both those cases, the physical activity and effort described was in excess of what is described in the instant record. In this case, assuming decedent waited until a co-worker lined up the machine and then he pulled the lever, the entire job according to Wilcenski could have been done by one man, and there is nothing in the record that indicates how many times the lever was pulled, or that it was arduous or strenuous work. Accordingly, I vote for reversal.